1       UNITED STATES DISTRICT COURT
2        DISTRICT OF PUERTO RICO

3    EMILIO CACHO-TORRES,

4         Plaintiff,

                                    Civil No. 05-1825 (JAG/JAF)
5         v.

6    CHRISTIAN MIRANDA-LOPEZ;
7    JOSE L. RODRIGUEZ-ORTIZ;
8    JOHN DOE AND RICHARD ROE, all
9    in their Official and Personal
10   Capacities as Police Officers and
11   as Representatives of the Conjugal
12   Partnerships that they Comprise,

13        Defendants.

14                    **OPINION AND ORDER**

15        Pending before the court is Defendants' Motion to Dismiss filed

16   pursuant to Fed. R. Civ. P. 12(b)(6)("Defendants' Motion") and

17   Plaintiff's Opposition thereto (Plaintiff's Opposition"). Docket

18   Nos. 39 and 54. The claims under consideration are brought by

19   Plaintiff, Emilio Cacho-Torres ("Torres"), under Sections 1983 and

20   1988 of the Civil Rights Act of 1964, 42 U.S.C. §§ 1983 and 1988, the

21   Fourth, Fifth, and Fourteenth Amendments of the United States

22   Constitution, and Article II, Sections 7, 8 and 10 of the

23   Constitution of the Commonwealth of Puerto Rico, against two officers

24   of the Puerto Rico Police Department ("PRPD"), Christian Miranda-

25   López ("Miranda"), José L. Rodríguez-Ortiz ("Rodríguez"), an unknown

26   officer of the Puerto Rico National Guard ("John Doe guardsman"),

27   unknown supervisors of Co-defendants ("Richard Roe"), and other

1    unknown officials ("John Doe"). Having thoroughly reviewed the

2    filings, and applicable law, Defendants' Motion is hereby **GRANTED in**

3    **part** and **DENIED in part**.

4                                   **I.**

5                          **Factual Background**

6         The following relevant facts are alleged in Plaintiff's Amended

7    Complaint and taken as true for the purpose of resolving Defendants'

8    Motion. During the early afternoon on August 6, 2004, Plaintiff

9    Torres was consuming a few beers in a business at Avenida R. H. Todd,

10   in Santurce, Puerto Rico, when a group of students began bothering

11   him and shouting at him. Torres was scolding the students as Co-

12   defendants Miranda and Rodríguez arrived in their police vehicle

13   accompanied by John Doe guardsman.

14        Co-defendants Miranda and Rodríguez intervened and questioned

15   Plaintiff Torres regarding the incident. Torres informed Co-

16   defendants Miranda and Rodríguez that he was calm and was going to

17   the bus stop to return home. In response, Co-defendants Miranda and

18   Rodríguez pushed Torres to the bus stop and struck him, causing him

19   to fall. Miranda and Rodríguez put Torres face down, "struck him

20   again, kicked him and hit him with the butt of a weapon." Docket

21   No. 34, ¶ 15. John Doe guardsman witnessed these events, but did not

22   intervene. Co-Defendants Miranda and Rodríguez placed Torres in their

23   squad car, transported him to Precinct 266 at Calle Hoare, in

24   Santurce, and placed him in a cell. Co-defendants Miranda and

1    Rodríguez left Plaintiff handcuffed in the cell for several hours,

2    during which time, at some point, they beat him again.

3         Later the same evening, Co-defendants Miranda and Rodríguez

4    informed Torres' mother at her residence that Torres was being

5    detained at the precinct, after being found drunk and disturbing the

6    peace. Miranda and Rodríguez also informed Torres' mother that

7    Plaintiff had fallen and that someone could come to the precinct to

8    pick him up. Torres' brother went to the precinct, where he found

9    Torres handcuffed and wet in a cell, having defecated on himself, and

10   bleeding from the head. Miranda and Rodríguez informed Torres'

11   brother that Torres had been hitting himself in the cell. None of

12   Torres' injuries were self-inflicted.

13        Either Co-defendant Miranda or Rodríguez informed Torres'

14   brother that the officers would be giving Plaintiff "a break" and not

15   filing charges, since his parents were elderly and his father was

16   ill. Torres was limping on the way home and upon arriving home, he

17   fell. An ambulance transported Torres to the CDT at Calle Hoare,

18   where CDT representatives informed Torres' family that he was

19   inebriated. Torres remained at the CDT over night. The next day, on

20   August 7, 2004, CDT representatives informed Torres' brother that

21   nothing was wrong with Torres. When Torres left the CDT dispensary,

22   he could not walk.

1        On August 9, 2004, Plaintiff Torres was taken to Hospital Pavía,

2    in Hato Rey, Puerto Rico, to receive a CT scan. The CT scan indicated

3    that Torres had a clot in his brain.

4        On August 20, 2004, at Puerto Rico's Centro Médico, Torres

5    underwent an operation to have the blood clot removed. Torres'

6    attending physicians indicated that he did not have any condition,

7    such has high blood pressure, that would provoke spontaneous cranial

8    bleeding.

9        After his operation, Torres spent thirty days at Heath South at

10   the University Hospital. Since that time, Torres has been totally

11   disabled, unable to work or lead a normal life, and receiving

12   ambulatory care (medical care provided on an outpatient basis).

13                                  **II.**

14                        **Procedural Background**

15       The pending motion is the second motion filed by Defendants

16   pursuant to Fed. R. Civ. P. 12(b)(6). On August 10, 2007, the United

17   States Court of Appeals for the First Circuit vacated this court's

18   judgment entered in favor of Defendants on Defendants' first motion

19   to dismiss. The Court of Appeals remanded the case with instructions

20   to allow for the filing of an amended complaint consistent with "the

21   new gloss on notice pleading" in Bell Atl. Corp. v. Twombly.[1] 550

_____

[1]Twombly abrogated the standard for notice pleading established in
Conley v. Gibson. Conley, 355 U.S. 41 (1957). In Conley, Justice Black
makes reference to "the accepted rule that a complaint should not be
dismissed for failure to state a claim unless it appears beyond doubt that

Civil No. 05-1825 (JAG/JAF)                                    -5-

1  U.S. 544, 562-63 (2007); Docket Nos. 11, 15 and 24. Approximately

2  eight months later, on April 1, 2008, Plaintiff filed his Amended

3  Complaint. Docket No. 34. On May 6, 2008, Defendants filed the

4  pending motion to dismiss. Defendants' Motion raises the following

5  grounds for dismissal: (1) Plaintiff's Section 1983 official-capacity

6  claims are barred by the Eleventh Amendment; (2) Plaintiff fails to

7  state a Section 1983 claim for which relief can be granted;

8  (3) Defendants are entitled to qualified immunity; and (4) in the

9  absence of any actionable federal claim, the court should dismiss

10 Plaintiff's supplemental claims. Docket No. 39.

11      The court has generously granted Plaintiff numerous extensions

12 of time to file his response. See Docket Nos. 43, 46, 47, 48, 49, 53.

13 Plaintiff failed to file his response by the first extended deadline

14 of June 12, 2008. Docket No. 43. Due to a subsequent change in

15 Plaintiff's counsel, the court deemed Defendants' Motion submitted

16 on November 13, 2008, after which Plaintiff did not file a response.

17 Docket No. 46. On the entry of new counsel for Plaintiff, the court

18 again extended the deadline for filing of Plaintiff's response to

---

the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45-46 (emphasis supplied). Twombly recognized that this language may leave courts with the impression that "a wholly conclusory statement of claim" would survive a motion to dismiss "whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." 550 U.S. at 561. Twombly clarifies that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563 (emphasis supplied).

1    March 26, 2008. <u>Docket Nos. 47, 48 and 49</u>. In lieu of a response, on

2    March 26, 2008, plaintiff filed a motion for leave to file a second

3    amended complaint, which we denied, and a motion to hold his response

4    in abeyance, which we granted. <u>Docket Nos. 50, 51, and 53</u>. On

5    March 31, 2009, Plaintiff filed his response to Defendants' Motion.

6    <u>Docket No. 54</u>.

**III.**

**<u>Analysis</u>**

**A.    <u>Standard of Judicial Review</u>**

10         Under Federal Rule of Civil Procedure 12(b)(6), a defendant may

11   move to dismiss an action against him based solely on the pleadings

12   for the plaintiff's "failure to state a claim upon which relief can

13   be granted." F<small>ED</small>. R. C<small>IV</small>. P. 12(b)(6). Our standard of review for

14   dismissal pursuant to Rule 12(b)(6) is well-established. In assessing

15   a motion to dismiss, "we accept as true the factual averments of the

16   complaint and draw all reasonable inferences therefrom in the

17   plaintiffs' favor." <u>Educadores Puertorriqueños en Acción v.</u>

18   <u>Hernández</u>, 367 F.3d 61, 62 (1st Cir. 2004) (citing <u>LaChapelle v.</u>

19   <u>Berkshire Life Ins. Co.</u>, 142 F.3d 507, 508 (1st Cir. 1998)); <u>see</u>

20   <u>Wash. Legal Found. v. Mass. Bar Found.</u>, 993 F.2d 962, 971 (1st Cir.

21   1993). We then determine whether the plaintiff has stated a claim

22   under which relief can be granted.

23         We note that a plaintiff must only satisfy the simple pleading

24   requirements of Federal Rule of Civil Procedure 8(a) in order to

Civil No. 05-1825 (JAG/JAF)                                   -7-

1    survive a motion to dismiss. <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S.

2    506, 512-14 (2002); <u>DM Research, Inc. v. College of Am. Pathologists</u>,

3    170 F.3d 53, 55 (1st Cir. 1999). A plaintiff must merely set forth

4    "a short and plain statement of the claim showing that the pleader

5    is entitled to relief," Fed.R.Civ.P. 8(a)(2), and need only give the

6    respondent fair notice of the nature of the claim and petitioner's

7    basis for it. <u>Swierkiewicz</u>, 534 U.S. at 512. "Given the Federal

8    Rules' simplified standard for pleading, '[a] court may dismiss a

9    complaint only if it is clear that no relief could be granted under

10   any set of facts that could be proved <u>consistent with the</u>

11   <u>allegations</u>.'" <u>Id.</u> at 514 (emphasis supplied) (quoting <u>Hishon v. King</u>

12   <u>& Spalding</u>, 467 U.S. 69, 73 (1984)). Simply put, Plaintiff's well-

13   pleaded facts "must 'possess enough heft' to set forth 'a plausible

14   entitlement to relief.'" <u>Gagliardi</u>, 513 F.3d 301, 305 (1st Cir. 2008)

15   (quoting <u>Twombly</u>, 550 U.S. at 557-59).

16   **B.   Eleventh Amendment Immunity**

18        The Eleventh Amendment to the U.S. Constitution provides that

19   the judicial power of the United States does not extend to any suit

20   in law or equity against a state by a citizen of another state or by

21   foreign citizens. U.S. CONST. Amend. XI. Eleventh Amendment immunity

22   is interpreted by the United States Supreme Court to extend to suits

23   against a state by its own citizens, like the present suit. <u>Tenn.</u>

24   <u>Student Assistance Corp. v. Hood</u>, 541 U.S. 440, 446 (2004) ("Although

25   the text . . . refers only to suits against a State by citizens of

1  another State, we have repeatedly held that an unconsenting State

2  also is immune from suits by its own citizens."). It is well-settled

3  that the Commonwealth of Puerto Rico is protected from suit by the

4  Eleventh Amendment to the same extent as the states. Torres-Alamo v.

5  Puerto Rico, 502 F.3d 20, 24 (1st Cir. 2007) ("'Puerto Rico, despite

6  the lack of formal statehood, enjoys the shelter of the Eleventh

7  Amendment in all respects.'") (quoting Ramirez v. P.R. Fire Serv.,

8  715 F.2d 694, 697 (1st Cir. 1983)); Diaz-Fonseca v. Puerto Rico, 451

9  F.3d 13, 34 (1st Cir. 2006).

10      Puerto Rico's officials share in the Commonwealth's Eleventh

11  Amendment immunity since a suit against one of its officials in their

12  official capacity is, in effect, a suit against the Commonwealth.

13  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) ("[A]

14  suit against a state official in his or her official capacity is not

15  a suit against the official but rather a suit against the official's

16  office."); Negron-Almeda v. Santiago, 528 F.3d 15, 21 n.2 (1st Cir.

17  2008) ("Claims against a state official are treated as claims against

18  the state."). Notably, the Eleventh Amendment does not bar suits in

19  federal court against state officers for prospective declaratory or

20  injunctive relief. Ex Parte Young, 209 U.S. 123, 155-56 (1908)

21  (finding that officers of the state engaged in unconstitutional acts

22  in the exercise of their duties could be enjoined by a federal court

23  of equity); Asociacion de Subscripcion Conjunta del Seguro de

24  Responsibilidad Obligatorio v. Flores, 484 F.3d 1, 24-25 (1st Cir.

1    2007); Nieves-Márquez v. Commonwealth of Puerto Rico, 353 F.3d 108,

2    123 (1st Cir. 2003). The "Ex Parte Young exception" is available

3    "where a plaintiff alleges an ongoing violation of federal law, and

4    where the relief sought is prospective rather than retrospective."

5    Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 294 (1997) (O'Connor, J.,

6    concurring in part and concurring in the judgment). Such prospective

7    declaratory and injunctive relief is not available where plaintiffs

8    allege violations of state law by state officials in federal court.

9    Diaz-Fonseca, 451 F.3d at 42-43 ("[I]t is difficult to think of a

10   greater intrusion on state sovereignty than when a federal court

11   instructs state officials on how to conform their conduct to state

12   law.") (quoting Pennhurst State School & Hosp. v. Halderman, 465 U.S.

13   89 (1994)).

14       The Eleventh Amendment's broad grant of immunity serves to

15   protect the Commonwealth's treasury and dignity interest in being

16   haled into federal court. Hess v. Port Authority Trans-Hudson Corp.,

17   513 U.S. 30, 30-31 (1994) (holding that bi-state railway authority

18   was not immune from suit because suit did not implicate states'

19   dignity interest or financial solvency); Fed. Mar. Comm'n v. S.C.

20   State Ports Auth., 535 U.S. 743, 760 (2002) ("The preeminent purpose

21   of state sovereign immunity is to accord States the dignity that is

22   consistent with their status as sovereign entities."); Fresenius Med.

23   Care Cardiovascular Res., Inc. v. P.R. and the Caribbean

24   Cardiovascular Ctr Corp., 322 F.3d 56, 63 (1st Cir. 2003), cert.

1    denied, 540 U.S. 878; E.E.O.C. v. Commonwealth of Puerto Rico, 451

2    F. Supp. 2d 296, 300-01 (D.P.R. 2006).  Notwithstanding this purpose,

3    there are two clear exceptions to the Eleventh Amendment's grant of

4    immunity.  First, Congress may abrogate a state's immunity pursuant

5    to a valid exercise of power. Maysonet-Robles v. Cabrero, 323 F.3d

6    43, 49 (1st Cir. 2003). Second, a state may waive its sovereign

7    immunity by consenting to federal court jurisdiction. Id.

8         Eleventh Amendment immunity extends to any entity that is an

9    "alter-ego" or "arm" of the state. Wojcik v. Massachusetts State

10   Lottery, 300 F.3d 92, 99 (1st Cir. 2002) (holding a state lottery

11   commission to be an "arm of the state" and, thus, immune from suit

12   under the Eleventh Amendment); Culebras Enters. Corp. v. Rios, 813

13   F.2d 506 (1st Cir. 1987) (holding that the Puerto Rico Conservation

14   Authority is the "alter ego" of the Commonwealth and, therefore,

15   immune from suit in federal court). The question of whether an entity

16   is an "alter-ego" or "arm" of the state is an issue of federal law

17   requiring a two-step analysis. Hess, 513 U.S. at 43-44; Fresenius,

18   322 F.3d at 61, 65; Breneman v. U.S. ex rel. F.A.A., 381 F.3d 33, 39

19   (1st Cir. 2004) (relying on the two-step analysis employed in Hess and

20   Fresenius). First, a court must determine whether a state has

21   indicated an intention, "either explicitly by statute or implicitly

22   through the entity's structure," that the entity share in the state's

23   Eleventh Amendment immunity. Redondo Const. Corp. v. Puerto Rico

24   Highway and Transp. Authority, 357 F.3d 124, 126 (1st Cir. 2004)

Civil No. 05-1825 (JAG/JAF)                                        -11-

1    (citing Hess and Fresenius); see Hess, 513 U.S. at 43-44; Fresenius,

2    322 F.3d at 65 (holding that the two-part analysis in Hess, having

3    refined the analysis employed in Metcalf & Eddy v. Puerto Rico

4    Aqueduct and Sewer Auth., 993 F.2d 935 (1st Cir. 2003), governs a

5    determination as to whether an entity is an arm of the state). The

6    structural "indicators of immunity," or lack thereof, that must be

7    evaluated include: (1) the "extent of state control included through

8    the appointment of board members," if any, and the "state's power to

9    veto board actions;" (2) "how the enabling and implementing

10   legislation characterized the entity and how the state courts have

11   viewed the entity;" (3) "whether the entity's functions are readily

12   classifiable as state functions or local or non-governmental

13   functions;" and (4) "whether the state bore legal liability for the

14   entity's debts." Fresenius, 322 F.3d at 68 (citing Hess, 513 U.S. at

15   44-46 for the above four factors).

16       If the above-listed indicators point markedly in one direction,

17   the court's analysis ends. If the indicators point in different

18   directions, then the dispositive question becomes whether an adverse

19   judgment would pose a threat to the state's treasury. Fresenius, 322

20   F.3d at 68 (this analysis focuses on whether the state has legally

21   or practically obligated itself to pay the entity's indebtedness);

22   Hess, 513 U.S. at 49 ("The 'vast majority of Circuits . . . have

23   concluded that the state treasury factor is the most important factor

1    to be considered . . . and, in practice have generally accorded this

2    factor dispositive weight.'") (citing briefs).

3         We now turn to whether the PRPD or the PRNG is an arm of the

4    Commonwealth of Puerto Rico, entitling it and its officials to

5    Eleventh Amendment immunity.  This court has routinely held that the

6    PRPD is an arm of the Commonwealth that enjoys Eleventh Amendment

7    immunity. See Crispin-Taveras v. Municipality of Carolina, 2009 WL

8    349751, at *3 (D.P.R. Feb. 10, 2009); Nieves v. Comm. of P.R., 425

9    F. Supp. 2d 188, 192 (D.P.R. 2006); López-Rosario v. Police Dept.,

10   126 F. Supp. 2d 167, 170-71 (D.P.R. 2000); Aguilar v. Comm. of P.R.,

11   2006 WL 3000765, at *1 (Oct. 19, 2006); Suárez-Cesetero v. Pagán-

12   Rosa, 996 F. Supp. 133, 142-43 (D.P.R. 1998). As further explained

13   below, we see no reason here to part ways with these cases.

14        On at least two occasions, this court has dismissed claims

15   brought against the Puerto Rico National Guard or its officers, in

16   their official capacities, as barred by the Eleventh Amendment. Roig

17   v. Puerto Rico National Guard, 47 F. Supp. 2d 216 (D.P.R. 1999)

18   (citing Ursulich v. Puerto Rico National Guard, 384 F. Supp. 736

19   (D.P.R. 1974)("A § 1983 suit against the Puerto Rico National Guard

20   and its officers in their official capacities is essentially a suit

21   against the Commonwealth of Puerto Rico."). Chief Judge Toledo, in

22   Ursulich, first considered the issue. Ursulich found two factors

23   dispositive in determining that the Puerto Rico National Guard should

24   share in the Commonwealth's Eleventh Amendment immunity: the PRNG's

Civil No. 05-1825 (JAG/JAF)                                    -13-

1  lack of power to sue or be sued[2] and the fact that if a judgment

2  would be rendered against the PRNG, it would be paid from the

3  Commonwealth's treasury. Ursulich, 384 F. Supp. at 738 (D.P.R. 1974)

4  (relying on factors enumerated in Canadian Transport Co. v. Puerto

5  Rico Ports Authority, 333 F. Supp. 1295 (1971)). Although "indicators

6  of immunity" have evolved since Ursulich, we reach the same

7  conclusion today under the more recent Fresenius. We note in regard

8  to indicators one through four above that the PRNG: (1) is commanded

9  by the Governor of Puerto Rico, 25 LPRA §§ 2051, 2055, 2057 and 2058;

10  (2) is characterized in its enabling act as a part of the Military

11  Forces of Puerto Rico, included for funding purposes in the general

12  budget of the Government of Puerto Rico, 25 LPRA §§ 2051, 2092;

13  (3) serves a governmental, non-proprietary function, see, e.g., 25

14  LPRA § 2058(b) (authorizing service when the "public safety requires

15  it"); and most importantly, (4) would not be able to independently

16  satisfy adverse judgments against it or its officers without

17  assistance from the public treasury, 25 LPRA §§ 2051 et seq. We find

18  that the indicators point markedly in one direction — towards

19  immunity.

20       While Plaintiff's Amended Complaint requests equitable relief in

21  the form of a declaratory judgment, we do not find such relief to be

---

[2]Contrary to Ursulich, 384 F.Supp. at 738, and without citation to authority, Plaintiff asserts that the National Guard "has the ability to sue and be sued in its own name." Docket No. 54 ¶ 46.

1    "prospective" in the sense that, if granted, it would remedy an

2    ongoing constitutional violation. The Ex Parte Young exception,

3    therefore, does not apply.

4        Plaintiff offers valid, but readily distinguishable, authority

5    to support his position that the PRPD and PRNG (and their officials)

6    waived any right to Eleventh Amendment immunity. First, Plaintiff

7    argues that the PRPD and PRNG waived any Eleventh Amendment immunity

8    as a precondition to the receipt of federal funds. Docket No. 54

9    ¶¶ 42, 43. Indeed, the waiver of Eleventh Amendment immunity may be

10   made a condition to a state's receipt of federal funding or

11   participation in a federal program. See Vives v. Rey, 310 F. Supp. 2d

12   402 (D.P.R. 2004); Atascadero State Hosp. v. Scanlon, 473 U.S. 234,

13   247 (1985), superceded by statute as stated in Vives, supra; A.W. v.

14   Jersey City Public Schools, 341 F.3d 234, 242 (3rd Cir. 2003) (holding

15   that Section 1403 of the Individuals with Disabilities in Education

16   Act, 20 U.S.C. § 1400 et seq., "constitutes a clear statement of

17   Congress' intent to condition the receipt of federal IDEA funds on

18   a state's waiver of Eleventh Amendment immunity."). But, notably,

19   such a waiver must be "stated by the most expressive language or by

20   such overwhelming implication from the text as [will] leave no room

21   for any other reasonable construction." Vives, 310 F. Supp. 2d at

22   404. Simply put, congressional intent must be "unequivocal."

23   Atascadero State Hosp., 473 U.S. at 246. By way of example, in Vives,

24   this court held that the Commonwealth waived any Eleventh Amendment

1    immunity to a student's Rehabilitation Act claim under language in

2    the Act that provides: "A State shall not be immune under the

3    Eleventh Amendment of the Constitution of the United States from suit

4    in Federal court for a violation of section 504 of the Rehabilitation

5    Act of 1973."  310 F. Supp. 2d at 404 (citing 42 U.S.C.A. § 2000d-

6    7).[3] Noticeably absent here in Plaintiff's Opposition is any

7    reference at all to a provision of federal law that we might construe

8    to be a waiver of Eleventh Amendment immunity by the PRPD or PRPD.

9       Second, Plaintiff argues that the PRPD and PRNG waived any right

10   to Eleventh Amendment immunity upon the acceptance of federal

11   funding. Docket No. 54, ¶ 46. We disagree. A state does not

12   automatically forfeit Eleventh Amendment immunity through

13   participation in a federal program that provides federal funds for

14   state operated systems of public aid. Atascaero State Hosp., 473 U.S.

15   234, 246-47; Edelman v. Jordan, 415 U.S. 651, 673; (1974); see 3 LPRA

16   § 2501(c) (including the PRNG and PRPD in the category of "public

17   safety agencies and programs"). As such, Plaintiff's claimed "multi

18   million dollar participation in federal grants and monies by the

19   Commonwealth of Puerto Rico, its Police Department and the National

20   Guard" has no bearing on the issue of waiver. Docket No. 54, ¶ 43.

---

[3]Curiously, Atascadero and Lane v. Pena, 518 U.S. 187 (1996), relied on by Plaintiff, concern claims brought under the Rehabilitation Act prior to Congress' incorporation of an express "waiver" in Section 2000d-7 of the Act.

1   Third, Plaintiff argues that Defendants waived any Eleventh

2   Amendment immunity through their conduct in litigation, either by

3   filing an answer or counterclaim or making a general appearance.

4   Docket No. 54, ¶ 44. Plaintiff further states that Defendants "have

5   submitted themselves voluntarily to the jurisdiction of the Court,

6   when they voluntarily invoked the jurisdiction of the federal court

7   and made a 'clear declaration'" to that effect. Docket No. 54, ¶ 45.

8   A state entity may, through certain affirmative conduct in litigation

9   or an express declaration, waive its right to assert Eleventh

10  Amendment immunity from suit in federal court. Diaz-Fonseca, 451 F.3d

11  at 33; see, e.g., Lapides v. Board of Regents of University System

12  of Georgia, 535 U.S. 613, 622 (2002) (holding that state defendant

13  waived its right to assert immunity by removing the suit from state

14  to federal court); Clark v. Barnard, 108 U.S. 436, 447-48 (1883)

15  (holding that state waived right to immunity when it intervened as

16  a claimant); Skelton v. Henry, 390 F.3d 614, 618-19 (8th Cir. 2004)

17  (holding that the state did not waive Eleventh Amendment immunity by

18  asserting a counterclaim and third-party claim when it also raised

19  the immunity defense in its answer with which it asserted those

20  claims). Having carefully reviewed the docket, we find no

21  "declaration" or any conduct whatsoever on the part of Co-defendants

22  that might be construed as a voluntary waiver of their Eleventh

23  Amendment immunity. Defendants' activity to date is limited to two

24  motions to dismiss, both of which raise Eleventh Amendment immunity.

Civil No. 05-1825 (JAG/JAF)                                           -17-

1    <u>Docket Nos. 11 and 39</u>. To the contrary, Defendants are by no means

2    willingly before this court.  Finding no waiver, Plaintiff's Section

3    1983 claims against Co-defendants Miranda, Rodríguez, John Doe

4    guardsman, their unknown supervisors ("Richard Roe"), and other

5    unknown officials ("John Doe"), all in their official capacities, are

6    hereby **DISMISSED WITH PREJUDICE.**[4]

7    **C.   <u>Plaintiff's Section 1983[5] Claims for Violation of the Fourth,</u>**
8    **<u>Fifth, and Fourteenth Amendments</u>**
9
10        Co-Defendants argue that Plaintiff fails to state a Section 1983

11   claim for violation of the Fourth, Fifth, and Fourteenth Amendments.

12   <u>Docket No. 39</u>.  The essential elements of claim brought under Section

13   1983 of the Civil Rights Act are: (1) conduct committed by a person

14   acting under color of state law, (2) that deprived plaintiff(s) of

15   rights, privileges or immunities secured by the Constitution or laws

16   of the United States. <u>Parrat v. Taylor</u>, 451 U.S. 527 (1981),

17   overruled on other grounds, <u>Hudson v. Palmer</u>, 468 U.S. 527 (1984);

18   <u>Rodriguez-Cirillo v. Garcia</u>, 115 F.3d 50, 52 (1st Cir. 1997) (citing

---

[4]Plaintiff's second cause of action is brought against José *sic* [Pedro] Toledo-Dávila ("Dávila"), Superintendent of the Puerto Rico Police Department, a person who is not a named defendant in this case. That fact alone makes any attempt to plead a claim against Dávila futile.

[5]Section 1983 of Title 42 of the United States Code reads as follows: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States of other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

1    Martinez v. Colón, 54 F.3d 980, 984 (1st Cir. 1995)); Voutour v.

2    Vitale, 761 F.2d 812, 819 (1st Cir. 1985). The second element requires

3    a causal connection between the alleged conduct of a defendant and

4    deprivation of a federally-protected right. Rodriguez, 115 F.3 at 52

5    (citing Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 559 (1st Cir.

6    1989)) (emphasis supplied); Wilson v. City of North Little Rock, 801

7    F.2d 316, 322 (8th Cir. 1986); Coon v. Ledbetter, 780 F.2d 1158, 1161

8    (5th Cir. 1986). Consequently, a supervisor's liability under Section

9    1983 "cannot be predicated on a respondeat superior theory . . . but

10   only on the basis of [the supervisor's] own acts or omissions."

11   Seekamp v. Michaud, 109 F.3d 802, 808 (1st Cir. 1997) (citing Sanchez

12   v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996). A supervisor can only

13   be held liable for the violation of a federal right under Section

14   1983 if (1) the behavior of his or her subordinate results in the

15   violation, and (2) the supervisor's action or inaction is

16   "affirmatively linked" to the subordinate's conduct such that it

17   could be characterized as "supervisory encouragement, condonation,

18   or acquiescence" or "gross negligence amounting to deliberate

19   indifference." Id. An important factor to consider in determining

20   supervisory liability for a Section 1983 claim is whether a

21   supervisor was put on some kind of notice of the violation. Lipsett

22   v. Univ. of Puerto Rico, 864 F.2d 881, 902 (1st Cir. 1988)("[O]ne

23   cannot make a 'deliberate' or 'conscious' choice to act or not to act

Civil No. 05-1825 (JAG/JAF)                                    -19-

1    unless confronted with a problem that requires the taking of

2    affirmative steps.").

3         Liability under Section 1983 may be imposed for a failure to act

4    that deprives a person of his or her constitutional right, but only

5    when there is a duty to act to prevent the deprivation. Clark v.

6    Taylor, 710 F.2d 4, 10 (1st Cir. 1983) ("Even absent supervisory

7    authority, however, a party's position of responsibility may impose

8    on him a duty to intervene to prevent a constitutional violation.").

9    We now consider whether the facts plead by Plaintiff state a

10   plausible entitlement to relief under Section 1983 for violation of

11   the Fourth, Fifth and Fourteenth Amendments.

12        **1.   Fourth Amendment**

13             **a.   Use of Excessive Force**

14        The Fourth Amendment, through the Fourteenth Amendment,[6]

15   protects individuals against unreasonable searches and seizures by

16   the state. U.S. Const. amend. IV ("[t]he right of people to be secure

17   in their persons, houses, papers, and effects, against unreasonable

18   searches and seizures, shall not be violated and no Warrants shall

19   issue, but upon probable cause . . . ."); see United States v. Price,

20   383 U.S. 787 n.7 (1966); Yeo v. Town of Lexington, 131 F.3d 241, 249

21   n.3 (1st Cir. 1997)(en banc), cert. denied, 525 U.S. 904 (1998);

_____

[6]The Fourth Amendment's prohibition against unreasonable seizures has been made applicable to the states by the Fourteenth Amendment. See Martinez-Rivera v. Sanchez Ramos, 498 F.3d 3, 7 n.4; Maryland v. Pringle, 540 U.S. 366 (2003).

1    United States v. Lopez, 989 F.2d 24, 26 (1st Cir. 1993). A seizure

2    occurs when an officer, "by means of physical force or other show of

3    authority, restrains the liberty of a citizen" and the person submits

4    to the restriction under a reasonable belief that he or she "would

5    have believed that he or she was not free to leave." United States

6    v. Sealey, 30 F.3d 7, 9 (1st Cir. 1994); United States v. Holloway,

7    499 F.3d 114, 117 (1st Cir. 2007) (quoting Sealey).  The question of

8    whether a seizure is reasonable depends on the situation and requires

9    a "balance between the public interest and the individual's right to

10   personal security free from arbitrary interference by law officers."

11   United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975).

12       Plaintiff's Amended Complaint alleges that all known and unknown

13   defendants violated Plaintiff's civil rights under the Fourth

14   Amendment through "police brutality" and "use of excessive force"

15   while acting under "color of law." Docket No. 34, ¶¶ 1, 4-8. We may

16   reasonably infer that the alleged "excessive force" and "police

17   brutality" refers to the beating of Plaintiff by Co-defendants

18   Rodríguez and Miranda at the bus stop and during his detention in a

19   cell. Docket No. 34, ¶¶ 15 and 18. Plaintiff's Amended Complaint does

20   not state that John Doe guardsman actually hit Plaintiff or for what

21   purpose or in precisely what capacity John Doe guardsman was

22   patrolling with Co-defendants Miranda and Rodríguez. It is,

23   therefore, not clear as to whether John Doe guardsman actually had

24   a duty to act to prevent physical abuse and deprivation of

Civil No. 05-1825 (JAG/JAF)                                        -21-

1    Plaintiff's Fourth Amendment right. Plaintiff's Amended Complaint

2    does allege, however, that John Doe guardsman was present at the bus

3    stop and failed to intervene to protect Plaintiff from Co-defendants

4    Miranda and Rodríguez while acting under color of state law, which

5    in turn contributed to Plaintiff's injuries. Taken as true, we find

6    that these allegations state a plausible entitlement to relief under

7    the Fourth Amendment against Co-defendants Miranda, Rodríguez, and

8    John Doe Guardsman. Accordingly, Defendants' Motion for failure to

9    state a Section 1983 claim against Co-defendants Rodríguez, Miranda,

10   and John Doe guardsman in their official and personal capacities for

11   excessive use of force is **DENIED.**

12       Plaintiff's Section 1983 claims against unknown supervisors

13   ("Richard Roe"), are expressly premised on a theory of "supervisory

14   liability," <u>Docket No. 34, ¶ 8</u>. Plaintiff's Amended Complaint is void

15   of any factual allegations affirmatively linking the conduct of

16   unknown supervisors to that of their subordinate officers. Absent an

17   alleged "causal connection" to the claimed unconstitutional seizure,

18   Plaintiff's Amended Complaint fails to state a plausible entitlement

19   to relief under the Fourth Amendment against unknown supervisors

20   ("Richard Roe"). Accordingly, Defendants' Section 1983 claims against

21   unknown supervisors ("Richard Roe"), in their official and personal

22   capacities, for the excessive use of force are **DISMISSED WITH**

23   **PREJUDICE.**

1          **b.   Malicious Prosecution**

2          Defendants argue that Plaintiff fails to state a claim under

3     Section 1983 for malicious prosecution "in light of the fact that no

4     criminal action was initiated or instigated by appearing defendants."

5     Docket No. 39, at 13. Defendants' argument is well-taken. The First

6     Circuit has "assume[d] without deciding that malicious prosecution

7     can, under some circumstances, embody a violation of the Fourth

8     Amendment and thus ground a cause of action under section 1983."

9     Nieves v. McSweeney, 241 F.3d 46, 54 (1st Cir. 2001) (quoting Roche

10    v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256 (1st Cir. 1996);

11    Albright v. Oliver, 510 U.S. 266, 275-76 (1994) (acknowledging that

12    an alleged deprivation of one's right to be free from prosecution

13    without probable cause might be judged under the Fourth Amendment).[7]

14    The First Circuit requires that the alleged malicious prosecution

15    result in a deprivation of liberty "consistent with the concept of

16    [a] seizure." Britton v. Maloney, 196 F.3d 24, 28 (1st Cir. 1999).

17    And, inherent in the term "prosecution," is a requirement that the

18    "unreasonable seizure" result pursuant to some "legal process." Heck

19    v. Humphrey, 512 U.S. 477, 484 (1994) (stating that the common law

20    cause of action for malicious prosecution "permits damages for

21    confinement imposed pursuant to some legal process"); Calero-Colon,

---

[7] There would appear to be a divergence of opinion among the circuits
as to what extent a claim of malicious prosecution is actionable under
Section 1983 for violation of rights secured by the Fourth Amendment. See
Albright, 510 U.S. at 271 n.4.

1    68 F.3d 1, 3 (1ˢᵗ Cir. 1995) ("the tort of malicious prosecution

2    contemplates general damages as well as compensation for any arrest

3    and imprisonment preceding the termination of the criminal

4    proceeding"); McSweeney, 241 F.3d 46 ("[T]he offending legal process

5    comes either in the form of an arrest warrant (in which case the

6    arrest would constitute the seizure) or a subsequent charging

7    document (in which case the sum of post-arraignment deprivations

8    would comprise the seizure)."). In line with the above authority are

9    the elements of a claim for malicious prosecution under Puerto Rico

10   common law, which require a showing that: (1) a criminal action was

11   initiated and instigated by defendants; (2) a criminal action

12   terminated in favor of plaintiff; and (3) the defendants acted with

13   malice and without probable cause; and (4) plaintiff suffered

14   damages. Torres v. Superintendent of Police of Puerto Rico, 893 F.2d

15   404, 409 n.7 (1ˢᵗ Cir. 1990); Rodriguez-Esteras v. Solivan-Diaz, 266

16   F. Supp. 2d 270 (D.P.R. 2003).

17        As noted above, Plaintiff's Amended Complaint alleges that an

18   unconstitutional seizure occurred. Noticeably absent from Plaintiff's

19   Amended Complaint, however, is any allegation that such actions were

20   carried out pursuant to some legal process, such as an arrest warrant

21   or criminal proceeding that terminated in favor of Plaintiff.

22   Furthermore, Plaintiff acknowledges, but does not challenge, the

23   stated cause for his detention, i.e., being drunk and disturbing the

24   peace. We find that the allegations in Plaintiff's Amended Complaint

1    fail to state a plausible entitlement to relief under the Fourth

2    Amendment for malicious prosecution against any known or unknown

3    Defendant. Accordingly, Plaintiff's Section 1983 claims against all

4    known and unknown Defendants, in their personal and official

5    capacities, for malicious prosecution, are **DISMISSED WITH PREJUDICE.**

6            **2.   <u>Fourteenth Amendment</u>**

7            Plaintiff's Section 1983 claim is brought, in part, on a claimed

8    Fourteenth Amendment deprivation. <u>Docket No. 34 ¶ 1</u>; U.S. Const. Amend.

9    XIV, § 1 (providing that no State shall "deprive any person of life,

10   liberty, or property, without due process of law"). Neither

11   Plaintiff's Amended Complaint nor his Opposition identify

12   specifically what deprivations Plaintiff allegedly suffered. We glean

13   from Plaintiff's allegations of "police brutality" and "excessive

14   force," <u>Docket No. 34 ¶¶ 1, 43, and 45</u>, that Plaintiff alleges an

15   unconstitutional deprivation of liberty without due process of law

16   in violation of the Fourteenth Amendment. Plaintiff's Section 1983

17   claim is not properly based on a due process violation.

18           In <u>Graham v. Conner</u>, Chief Justice Rehnquist held that "*all*

19   claims" against law enforcement officers for "excessive force-deadly

20   or not in the course of an arrest, investigatory stop, or other

21   'seizure' of a free citizen" should be analyzed under the Fourth

22   Amendment and its "reasonableness" standard, rather than under a

23   "substantive due process" approach. 490 U.S. 386, 395 (1989)

24   ("Because the Fourth Amendment provides an explicit textual source

Civil No. 05-1825 (JAG/JAF)                                    -25-

1    of  constitutional  protection  against  this  sort  of  physically-

2    intrusive  governmental  conduct,  that  Amendment,  not  the  more

3    generalized notion of 'substantive due process,' must be the guide

4    for analyzing these claims."). Since <u>Graham</u>, the First Circuit Court

5    of Appeals and this court have declined to recognize Section 1983

6    claims based on an alleged deprivation of substantive due process

7    rights in violation of the Fourteenth Amendment. <u>Estate of Bennett</u>

8    <u>v. Wainwright</u>, 548 F.3d 155 (1st Cir. 2008) ("dismissing substantive

9    due process claim premised on deprivation of life interest because

10   claim was an excessive force claim more appropriately brought under

11   the Fourth Amendment); <u>Torres-Rivera v. O'Neill-Cancel</u>, 406 F.3d 43,

12   51-53 (1st Cir. 2005) (holding that an excessive-use of force claim

13   is governed by the "objectively reasonable" standard applicable to

14   Fourth  Amendment  claims,  rather  than  the  "shock  the  conscience'

15   standard  applicable  to  substantive  due  process  claims  under  the

16   Fourteenth Amendment); <u>Marrero-Rosado ex rel. JLSM v. Cartagena</u>, 2009

17   WL 890473, at *9 (D.P.R. March 27, 2009) (declining to review a

18   Section 1983 claim brought against police officers for alleged use

19   of excessive force as a "due process" violation).

20       A Section 1983 claim for malicious prosecution in violation of

21   a Plaintiff's due process rights under the Fourteenth Amendment is

22   also not actionable, to the extent Plaintiff attempts to plead such

23   a claim here.  The First Circuit has declared that: (1) "[t]here is

24   no substantive due process right under the Fourteenth Amendment to

1   be free from malicious prosecution," <u>Roche v. John Hancock Mutual</u>

2   <u>Life Ins.</u>, 81 F.3d at 249, 256 (1st Cir. 1996) (citing <u>Albright v.</u>

3   <u>Oliver</u>, 510 U.S. 266, 271 (1994); and (2) because Puerto Rico law

4   provides an adequate remedy for malicious prosecution, plaintiffs may

5   not also bring a procedural due process claim for malicious

6   prosecution under Section 1983. <u>Torres v. Supertendent of Police of</u>

7   <u>Puerto Rico</u>, 893 F.2d 404, 410-11 (1st Cir. 1990)(citing <u>Barnier</u> v.

8   Szentmiklosi, 810 F.2d 594, 600 (6th Cir. 1987).

9        There would appear to be no legal basis for Plaintiff's Section

10   1983 claims against Defendants for deprivation of Plaintiff's due

11   process rights under the Fourteenth Amendment. Accordingly,

12   Plaintiff's Section 1983 claims brought against all known and unknown

13   Defendants for deprivations of due process are hereby **DISMISSED WITH**

14   **PREJUDICE.**

15        3.   <u>**Fifth Amendment**</u>

16        Plaintiff's Section 1983 claims against Co-defendants for

17   violation of his due process rights under the Fifth Amendment fail

18   for two reasons. First, as explained above, Plaintiff's claims based

19   on the alleged use of excessive force and police brutality are

20   properly analyzed under the Fourth Amendment. Second, the Fifth

21   Amendment due process clause applies only "to actions of the federal

22   government" rather than those of the state. <u>Dusenbery v. United</u>

23   <u>States</u>, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the

24   Fifth Amendment prohibits the United States, as the Due Process

1  Clause of the Fourteenth Amendment prohibits the States from

2  depriving any person of property without 'due process of law.'"); <u>Lee</u>

3  <u>v. City of Los Angeles</u>, 250 F.3d 668, 687 (9th Cir. 2001). Plaintiff

4  does not allege unconstitutional conduct on the part of a federal

5  actor. Accordingly, Plaintiff's Section 1983 claims against

6  Defendants in their personal capacities for an alleged deprivation

7  of due process under the Fifth Amendment are hereby **DISMISSED WITH**

8  **PREJUDICE.**

9  **D.  <u>Qualified Immunity</u>**

10     Defendants assert that they are entitled to qualified immunity

11  from liability for Plaintiff's Section 1983 claims. <u>Docket No. 39,</u>

12  <u>at 13-16</u>. Under the doctrine of qualified immunity, government

13  officials performing discretionary functions are shielded from

14  personal liability for civil damages provided that their actions do

15  not "violate clearly established statutory or constitutional rights

16  of which a reasonable person would have known." <u>Behrens v. Pelletier</u>,

17  516 U.S. 299, 305 (1996); <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818

18  (1982). The First Circuit utilizes a three-part test when evaluating

19  whether an official is entitled to qualified immunity. <u>See</u> <u>Estate of</u>

20  <u>Bennett v. Wainwright</u>, 548 F.3d 155, 167-68 (1st Cir. 2008); <u>DeMayo</u>

21  <u>v. Nugent</u>, 517 F.3d 11, 17-19 (1st Cir. 2008); <u>Buchanan v. Maine</u>, 469

22  F.3d 158, 167-70 (1st Cir. 2006); <u>Burke v. Town of Walpole</u>, 405 F.3d

23  66, 76-77 (1st Cir. 2005); <u>Limone v Condon</u>, 372 F.3d 39, 44 (1st Cir.

24  2004). The test requires a determination as to: (1) "whether the

1    plaintiff's allegations, if true, establish a constitutional

2    violation," (2) "whether the constitutional right at issue was

3    clearly established at the time of the putative violation;" and

4    (3) "whether a reasonable officer, situated similarly to the

5    defendant, would have understood the challenged act or omission to

6    contravene the discerned constitutional right." DeMayo, 517 F.3d at

7    18; Burke, 405 F.3d at 77; Limone, 372 F.3d at 44. If all three

8    inquiries are answered in the affirmative, a court denies qualified

9    immunity.

10        We have concluded that Plaintiff only states actionable section

11   1983 claims against Co-defendants Miranda, Rodríguez, and John Doe

12   guardsman for the alleged use of excessive force in violation of the

13   Fourth Amendment. We, therefore, limit our analysis of qualified

14   immunity to parts two and three of the above test and a consideration

15   of Plaintiff's Fourth Amendment right.

16        Regarding part two, a citizen's Fourth Amendment right to be

17   free from the use of excessive, unreasonable force by law enforcement

18   officers is clearly established in case law, and even commonly

19   understood by non-practitioners. Morelli v. Webster, 552 F.3d 12, 22

20   (1st Cir. 2009) ("[O]ur case law supplies a crystal clear articulation

21   of the right, grounded in the Fourth Amendment, to be free from the

22   use of excessive force by an arresting officer."). We, therefore,

23   answer the second inquiry of the above three-part test in the

24   affirmative.

1    Regarding part three, we would benefit from Co-defendants'
2    impressions at the time of their intervention in deciding whether a
3    reasonable officer, similarly situated, would have understood the
4    alleged physical abuse to constitute a Fourth Amendment violation.
5    Limited to Plaintiff's version of the facts, we find that any
6    reasonable officer, and particularly officers of the PRPD and PRNG,
7    should have known that the use force as alleged in Plaintiff's
8    Amended Complaint would violate Plaintiff's Fourth Amendment right.
9    At this stage in the proceedings, we find that Co-Defendants Miranda,
10   Rodriguez, and John Doe guardsman are not entitled to qualified
11   immunity. We may reach a different conclusion on a more developed
12   record, however.

13   **E.   Plaintiff's Supplemental Claims**

14   Having dismissed Plaintiff's federal-based causes of action
15   against unknown supervisors ("Richard Roe") in both their personal
16   and official capacities, Plaintiff's pendent claims against the same
17   defendants are hereby **DISMISSED WITHOUT PREJUDICE.** 28 U.S.C.
18   § 1367(c); McGee v. Delica Co., Ltd., 417 F.3d 107, 128 (1st Cir.
19   2005); Gonzalez v. Family Dept., 377 F.3d 81, 89 (1st Cir. 2004); 28
20   U.S.C. § 1367(c).

1                                  **IV.**

2                               <u>Conclusion</u>

3          For the foregoing reasons, Defendants' Motion is **GRANTED in part**

4    and **DENIED in part**. Plaintiff's Section 1983 claims brought against

5    all known and unknown Defendants in their official capacities for

6    alleged violations of the Fourth, Fifth, and Fourteenth Amendments

7    of the U.S. Constitution are hereby **DISMISSED WITH PREJUDICE.**

8    Plaintiff's Section 1983 claims brought against all known and unknown

9    Defendants in their official and personal capacities for the alleged

10   deprivation of due process rights guaranteed by the Fifth and

11   Fourteenth Amendments are hereby **DISMISSED WITH PREJUDICE.**

12   Plaintiff's Section 1983 claims against unknown supervisors ("Richard

13   Roe") in their official and personal capacities for the alleged use

14   of excessive force in  violation of the Fourth Amendment are hereby

15   **DISMISSED WITH PREJUDICE.** Plaintiff's Section 1983 claims against all

16   known and unknown Defendants in their official and personal

17   capacities for the malicious prosecution of Plaintiff in violation

18   of the Fourth Amendment are hereby **DISMISSED WITH PREJUDICE.**

19   Plaintiff's state law claims against unknown Defendant supervisors

20   ("Richard Roe"), in their personal and official capacities, are

21   **DISMISSED WITHOUT PREJUDICE.**

22         The remaining triable issues are: (1) Plaintiff's Section 1983

23   claim against Defendants Miranda, Rodríguez, and John Doe guardsman,

Civil No. 05-1825 (JAG/JAF)                                        -31-

1    in their personal capacities, for alleged use of excessive force in

2    violation of the Fourth Amendment; (2) Plaintiff's supplemental

3    claims against the same defendants; and (3) Defendants' entitlement

4    to qualified immunity.

5           **IT IS SO ORDERED.**

6           San Juan, Puerto Rico, this 16th day of April, 2009.

7                                    s/José Antonio Fusté
8                                    JOSE ANTONIO FUSTE
9                                    Chief U.S. District Judge